UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case No. 1:24-cv-22126-WILLIAMS/GOODMAN**

RUDOLPH BETANCOURT,

      Plaintiff,

v.

CORPORACION HOTELERA
PALMA LLC, d/b/a TOWNE
PLACE SUITES MIAMI
LAKES, *et al*.

      Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON
<u>DRIFTWOOD'S MOTION TO DISMISS</u>**

In this injunctive relief action, Defendant Driftwood Hospitality Management[1]

("Driftwood") filed a Motion to Dismiss Plaintiff's Complaint. [ECF No. 19 ("Motion")].

Plaintiff filed a response, and Driftwood filed a reply. [ECF Nos. 23; 25]. United States

District Judge Kathleen M. Williams referred the Motion to me "for a report and

recommendations." [ECF No. 20].

For the reasons outlined below, the Undersigned **respectfully recommends** that

---

[1]      Plaintiff's Complaint also includes Defendants Operadora Hotelera Palma LLC ("Operadora") and Corporacion Hotelera Palma LLC d/b/a Towne Place Suites Miami Lakes ("Towne Place"). [ECF No. 1]. Neither of those Defendants joined Driftwood's Motion, and they filed Answers instead. [ECF Nos. 17; 18].

Judge Williams **grant** the motion and dismiss the Complaint (albeit **without** prejudice and with **leave** to file an amended complaint).

## I.      Factual Background (*i.e.*, Plaintiff's Allegations)

Plaintiff filed a Complaint against Defendants seeking injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C. § 1281 ("ADA"), ADA Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"), and the Florida Building Code. [ECF No. 1]. Plaintiff is a "double-leg amputee who uses prosthetic devices or a wheelchair to ambulate" and lives in Fenwick, Michigan. *Id*. at ¶¶ 4–5. Plaintiff alleges that he frequently visits Florida to enjoy the Florida weather and in-state events. *Id*. at ¶ 5.

Operadora "is the owner and/or operator/manager of the real property located on or 8079 NW 154th St Miami, Florida 33016 (hereinafter the "Subject Premises"). This is the building where the Subject Premises are located." *Id*. at ¶ 8. Operadora is also the franchisee/owner of Towne Place located at the Subject Premises. *Id*. at ¶ 9. Driftwood "is the manager and/or operator which was contracted and/or hired to manage the day-to-day [Towne Place] operations[.]" *Id*. at ¶ 11. Driftwood, as manager and/or operator of the Towne Place operations, "operates and/or maintains, in full or in part, the website and/or information contained on the website which allows for online reservations of guestrooms[.]" *Id*. at ¶ 12.

The core allegations are quoted below:

13.      Plaintiff most recently visited the Subject Premises on or about December 19, 2023, to avail of the services and accessed to the extent

possible, or attempted to access the Subject Premises and specific areas of the Subject Premises as described herein. After booking an "Accessible Room" that was not in fact accessible, [ ] Plaintiff visited the Website in an attempt to review what accessibility features the rooms were supposed to have.

14.     While visiting the Website, [ ] Plaintiff reviewed a general list of accessibility features on the main page of the Website. However, that list of accessibility features was not specific to rooms. Plaintiff then visited the Website's "Rooms" page to see the description of the rooms, which had limited accessibility information and indicated that the only Accessible Rooms were the Studios and that none of the 2 Bedroom Suites were Accessible Rooms. Plaintiff then visited the Website's ORS which did not provide any further information on the Rooms and further provided no way to reserve an Accessible Room. Plaintiff then visited Booking.com to see if there was a way to reserve an Accessible Room through a third-party website—however, Booking.com did not offer any additional information necessary for Plaintiff to conveniently book an Accessible Guestroom online just as able-bodied patrons are able, and that there would be no guarantee that an Accessible Room, even if booked by phone as he had already done, would actually meet his needs.

15.     While visiting the Subject Premises, Plaintiff personally encountered or observed several barriers to access in violation of the ADA and ADAAG as detailed further herein at Paragraph 29. As a result, Plaintiff has been denied access to the Subject Premises and full and equal enjoyment of the goods and services offered therein because of his disability and will continue to be denied such access as a result of those barriers.

16.     Said barriers to access at the Subject Premises endanger the safety of Plaintiff and all other individuals with disabilities, deny Plaintiff and others with disabilities equal access to the Subject Premises as to that of able-bodied persons, and causes social embarrassment due to the difficulties encountering such barriers to access—a social embarrassment that would not occur if the Subject Premises was in compliance with the ADA and ADAAG.

17.     Subsequently, Plaintiff encountered additional barriers to access, or

equal access, on the Defendants' Website[2] and ORS.[3]

18.    Said barriers to access on the Website and ORS cause an inconvenience that does not occur when able-bodied patron use the same Website and ORS.

19.    In encountering the barriers to access at the Subject Premises, and suffering the resulting discrimination, endangerment, and embarrassment—[ ] Plaintiff sustained a lawful injury-in-fact pursuant to the ADA.

20.    Pursuant to the mandates of 42 U.S.C. §[ ]12134(a), on September 15, 2010, the Department of Justice, Office of the Attorney General, published revised regulations for Title III of the Americans with Disabilities Act of 1990 in the Federal Register to implement the requirements of the ADA. Public accommodations were required to conform to these regulations on or before March 15, 2012.

21.    On March 15, 2012, the revised regulations implementing Title III of the ADA took effect, imposing significant new obligations on inns, motels, hotels and other "places of lodging." 28 C.F.R. §[ ]36.302(e)(l) provides that:

> Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party –
>
> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
>
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities

---

[2]    www.marriott.com/en-us/hotels/miats-towneplace-suites-miami-lakes/rooms/l/ ("Website")

[3]    ORS stands for "online reservation system" on the website.

to assess independently whether a given hotel or guest room meets his or his accessibility needs;

(iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

(iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

(v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

22.     In promulgating the new requirements, the Department of Justice made clear that individuals with disabilities should be able to reserve hotel rooms with the same efficiency, immediacy, and convenience as those who do not need accessible guestrooms. *28 C.F.R. Part 36, Appx. A.*

23.     Hotels (and motels) are required to identify and describe all accessible features in the hotel and guestrooms; "[t]his requirement is essential to ensure individuals with disabilities receive information they need to benefit from the services offered by the place of lodging." *28 C.F.R. Part 36, Appx. A.* Moreover, "a public accommodation's designation of a guestroom as "accessible" does not ensure necessarily that the room complies with all of the 1991 Standards." *28 C.F.R. Part 36, Appx. A.* Labeling a guestroom as "accessible" or "ADA" is not sufficient.

***

26.     However, for hotels in buildings constructed prior to the 1991 Standards, information about the hotel should include, at a minimum information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features

5

<u>that do not comply</u> with the 1991 Standards. For example, if the door to the "accessible" room or bathroom is narrower than required, this information should be included (e.g., door to guest room measures 30 inches clear). [emphasis added]. 28 C.F.R. Part 36, Appx. A.

27.     [Towne Place ("the Hotel")] is a place of public accommodation that owns and/or leases and operates a place of lodging pursuant to the ADA. The Hotel is in a building constructed prior to the 1991 Standards.

28.     The Website (and all other online reservation platforms used by the Hotel) allow reservations for the Hotel to be taken online. [ ] Defendant has control over information provided to the public about the Hotel through the Website and/or other online platforms.

                                        ***

30.     A specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations at the Subject Property which preclude and/or limit Plaintiff's ability (because of his disability) to access the Subject Premises and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Premises, and violations on the Website and ORS, include:

          **<u>Online Reservations System</u>**
          a)   The on-line reservation system does not permit an individual with disabilities to reserve an accessible room absent actually calling an agent at the listed phone numbers. However, prospective guests who are able–bodied have no such extra step and are fully able to complete their room reservations and transactions on-line at the web site absent calling an agent.

          **<u>Exterior Accessible Routes</u>**
          b)   Failure to provide an access aisle adjacent to the passenger vehicle pull-up space in violation of 2010 ADAAG §§[ ]209.2.1 and 503.

          **<u>Accessible Public Unisex Restroom</u>**
          c)   Failure to provide a locking mechanism that is operable with one hand in violation of 2010 ADAAG §[ ]309.4.

          d)   Failure to provide toilet paper dispensers in the compliant

location in violation of 2010 ADAAG §§[ ]603 and 604.7.

**Dining Area**

e)   Failure to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink in violation of 2010 ADAAG §§[ ]226 and 226.1.

**Accessible Room**

f)   Failure to provide the minimum number of rooms with mobility features in violation of 2010 ADAAG §§[ ]224, 224.2, and 806.2.

g)   Failure to provide a lowered security latch in violation of 2010 ADAAG §§[ ]308 and 309.3.

h)   Failure to provide a lowered iron in violation of 2010 ADAAG §§ 308 and 309.3.

i)   Failure to provide compliant grab bars in the compliant location in violation of 2010 ADAAG §§[ ]603, 604.5.1 and 604.5.2[.]

j)   Failure to provide compliant clearance around the toilet location in violation of 2010 ADAAG §§[ ]604, 604.3, and 604.3.2.

k)   Failure to provide grab bars free of obstructions in violation of 2010 ADAAG §[ ]609.3.

l)   Failure to provide a mirror at the compliant height above the finish floor in violation of 2010 ADAAG §§[ ]603 and 603.3.

m)  Failure to provide a bathtub seat capable of secure placement in violation of 2010 ADAAG §§[ ]607, 607.3, and 610.2.

n)   Failure to provide a lowered shower spray unit in violation of 2010 ADAAG §§[ ]308, 309.3, and 607.6.

o)   Failure to provide soap dispensers at the compliant height above the finish floor in violation of 2010 ADAAG §§[ ]308, 309.3.

**Fitness Area**

p)   Failure to provide compliant maneuvering clearance to exit

the fitness area in violation of 2010 ADAAG §§[ ]404, 404.2.4, and 404.2.4.1.

q)   Failure to provide a paper towel dispenser at the compliant height above the finish floor in violation of 2010 ADAAG §§[ ]308, 309.3.

r)   Failure to provide compliant clear floor space in violation of 2010 ADAAG §§[ ]236 and 1004.

**Pool Area**
s)   Failure to provide a compliant pool lift in violation of 2010 ADAAG §§[ ]242, 1009.2, 1009.2.2, and 1009.2.6.

31.   The above listing is not to be considered all-inclusive of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Subject Premises. Further, Plaintiff brings this action to remediate all violations of the ADAAG found to exist upon the Website and ORS, to remove all false information regarding accessibility from the Website, and upon all online reservation platforms used by the Hotel.

***

36.   Because, *inter alia*, this Subject Premises was designed, constructed, and received its Certificate of Occupancy on June 1, 1999, Plaintiff asserts that said ADA violations are intentional in nature and will not be corrected absent Court intervention, thus exacerbating the intentional legal harm and injury to which Plaintiff has been and will continue to be subjected in the future. Further, Marriot International, Inc., is a worldwide company that has been sued for physical barriers as well as website violations in the past, has extensive staff at it's disposal, and still has not ensured that the Website and ORS systems for the properties it manages are ADA and ADAAG compliant.

37.   Plaintiff will undoubtedly return to the Subject Premises once the barriers to access have been remediated, as well as to the Website to ensure that accurate and adequate accessibility information is provided and to ensure that the ORS system can also be used by persons with disabilities—not only to avail himself of the goods and services available at the Subject Premises, but to confirm and assure himself that the Subject Premises has been brought into compliance with the ADA and maintained

8

in compliance with the ADA so that Plaintiff and other persons with disabilities will have equal access to the Subject Premises without fear of discrimination, endangerment of their safety, or social and public embarrassment.

38.     Independent of his personal desire to access this place of public accommodation as required by law, Plaintiff is an advocate of the rights of similarly situated persons with disabilities and an advocate for asserting his own civil rights. However, Plaintiff is deterred from returning to the Subject Premises as long as [ ] Defendant continue[s] to operate the Subject Premises in violation of the ADA and ADAAG.

39.     Plaintiff has a realistic, credible, and continuing threat of discrimination by Defendant as long as the Subject Premises, Website, and ORS remain in non-compliance with the ADA.

40.     Defendant ha[s] discriminated against Plaintiff and others with disabilities by denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Premises, Website, and ORS, as prohibited by 42 U.S.C.[ ] § 12182, *et. seq.*, and by failing to remove architectural barriers as required by 42 U.S.C.[ ] § 12182(b)(2)(A)(iv), and further by failing to provide current and adequate accessibility information and to allow reservations of accessible guestrooms through its ORS, and will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant is compelled to remove all physical barriers that exist at the Subject Premises, and to comply with the ADA and ADAAG by providing accurate and adequate accessibility information on it's [sic] website and allowing persons with disabilities to reserve accessible guestrooms through it's [sic] ORS, including those specifically set forth herein, and make the Subject Premises, Website, and ORS, accessible to and usable by persons with disabilities, including Plaintiff.

41.     Plaintiff has suffered and continues to suffer direct and indirect injury as a result of the ADA violations that exist at the Subject Premises, Website, and ORS, and the actions or inactions described herein.

42.     Plaintiff is without adequate remedy at law and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant is required to remove the

physical barriers, dangerous conditions, and ADA violations that exist at
the Subject Premises, Website, and ORS, including those set forth herein.

43.     Plaintiff has been obligated to retain undersigned counsel for
the filing and prosecution of this action. [ ] Plaintiff is entitled to have his
reasonable attorney's fees, costs and expenses paid by [ ] Defendants,
pursuant to 42 U.S.C., §§ 12205 and 12217.

44.     Pursuant to 42 U.S.C. §[ ]12188(a), this Court is provided with
authority to grant injunctive relief to Plaintiff, including an order to alter
the Subject Premises to make it readily accessible to and useable by
individuals with disabilities to the extent required by the ADA, and closing
the Subject Premises until the requisite modifications are completed.

*Id*. at ¶¶ 13–23; 26–31; 36–44 (footnotes added).

Driftwood filed the Motion, arguing that Plaintiff's Complaint should be

dismissed because:

Plaintiff failed to establish his Article III standing to maintain this ADA
action because he failed to establish that he suffered any injury-in-fact and
has otherwise failed to establish the likelihood of a real and immediate
threat of injury sufficient to support the prospective injunctive relief he
seeks. In addition, Plaintiff improperly seeks redress for barriers that he has
not encountered, and for injuries to third parties. Plaintiff has no standing
to assert such claim.

[ECF No. 19, pp. 1–2].

Plaintiff filed a response and Driftwood filed a reply. [ECF Nos. 23; 25].

## II.   <u>Applicable Legal Standards and Analysis</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, "the court must accept all factual allegations in a complaint **as true** and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (emphasis added).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." It does not "require that a plaintiff specifically plead every element of a cause of action." *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196, 2009 WL 8659594, at *6 (S.D. Fla. Sept. 14, 2009) *(citing *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001), which, in turn, cited Jack H. Friedenthal, et al., Civil Procedure, § 5.7 (2d ed. 1993) for the view that "[w]hat the pleader need not do is worry about the particular form of the statement or that it fails to allege a specific fact to cover every element of the substantive law involved.").

There are two approaches a defendant can take in attacking a complaint: "(1) a facial attack, which challenges whether the plaintiff has alleged a basis for subject matter jurisdiction, taking all allegations in the complaint as true; and/or (2) a factual attack, which challenges the existence of subject matter jurisdiction irrespective of the pleadings, and allows extrinsic evidence to be considered." [ECF No. 19, pp. 5–6 (citing *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021))].

These "two forms of attack differ substantially." *Lawrence v. Dunbar*, 919 F. 2d 1525, 1529 (11th Cir. 1990). "While facial attacks afford plaintiffs 'safeguards similar to those provided in opposing a Rule 12(b)(6) motion,' factual attacks offer no presumption of truthfulness to plaintiffs' allegations and 'the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Betancourt v. River Lanes of Titusville Inc*, No. 6:23-CV-414-PGB-DCI, 2023 WL 4405487, at *2 (M.D. Fla. July 7, 2023) (quoting *Lawrence*, 919 F. 2d at 1529).

Here, Driftwood "mounts both a factual and facial attack," asserting that "Plaintiff has not alleged facts to support subject matter jurisdiction, and asserts that the facts adducible through the publicly available court dockets establish Plaintiff has no intent on returning to the subject hotel at *any time*, let alone in the immediate future." [ECF No. 19, p. 6 (emphasis in original)]. The Undersigned will first address Driftwood's factual attack.

### *Driftwood's Factual Attack*

"When standing is challenged on a factual basis, the plaintiff must demonstrate

that standing exists by a preponderance of the evidence." *Rosenkrantz v. Markopoulos*, 254 F. Supp. 2d 1250, 1252 (M.D. Fla. 2003) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). Driftwood attached two exhibits to its Motion in support of its factual attack: a compilation of Plaintiff's ADA lawsuits in Florida since 2022, and a compilation of Plaintiff's complaints against other Florida hotels with "nearly identical allegations." [ECF Nos. 19-1; 19-2]. In response, Plaintiff submitted a copy of his hotel bill from the Subject Premises. [ECF No. 23-1]. Driftwood argues that because "Plaintiff has not pled, and cannot reasonably amend to plead consistent with Rule 11(b), any specific, future plans to visit the hotel at issue, the Complaint should be summarily dismissed." [ECF No. 19, p. 12].

Plaintiff contends that Driftwood's argument mimics those made in *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013). In *Houston*, the defendant argued that the plaintiff's "litigation history cast doubt on his sincerity to return to the [subject premises] and face future discrimination." *Id.* at 1326. "As this Court stated in *Shotz*, a plaintiff seeking an injunction under Title III either must 'have attempted to return' to the non-compliant building or at least 'intend to do so in the future.'" *Id.* at 1336 (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)). Thus, "to have standing, Plaintiff [ ] must show past injury and a real and immediate threat of future injury." *Kennedy v. Beachside Com. Props., LLC*, 732 F. App'x 817, 820 (11th Cir. 2018) (quoting *Houston*, 733 F.3d at 1329).

The *Houston* Court applied a four-factor test to assess the likelihood a plaintiff would return to the defendant's business and suffer future discrimination. 733 F.3d at 1327. The four factors were: (1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business. *Id*. Ultimately, the *Houston* Court found that the plaintiff **there** had averred a concrete and realistic plan of when he would return to a supermarket by alleging that he visited his lawyer's offices near the supermarket on a frequent basis. *Id*. at 1340 (emphasis added).

The *Houston* Court rejected the defendant's argument because, even though the plaintiff was a tester plaintiff with multiple active ADA-based suits, the undisputed evidence demonstrated that the plaintiff would return to the subject premises. *Id*. at 1336.

Plaintiff highlights the following language from his Complaint:

> Plaintiff will undoubtedly return to the Subject Premises once the barriers to access have been remediated, as well as to the Website to ensure that accurate and adequate accessibility information is provided and to ensure that the ORS system can also be used by persons with disabilities—not only to avail himself of the goods and services available at the Subject Premises, but to confirm and assure himself that the Subject Premises has been brought into compliance with the ADA and maintained in compliance with the ADA so that Plaintiff and other persons with disabilities will have equal access to the Subject Premises without fear of discrimination, endangerment of their safety, or social and public embarrassment.

[ECF No. 23, p. 12 (quoting ECF No. 1, ¶ 37)]. He argues that his motive to "'confirm and assure himself that the Subject Premises has been brought into compliance with the ADA

and maintained in compliance with the ADA' has been recognized as legitimate by the Eleventh Circuit in tandem with other facts demonstrating a plaintiff's concrete plan to return to a property." *Id.* (citing *Houston*, 733 F.3d at 1336).

However, *Houston* is distinguishable from the instant action because of the proximity of the premises and likelihood of the plaintiff's future return to the location at issue. The *Houston* Court reasoned that:

> Plaintiff Houston has visited this [location at issue] twice and encountered the alleged architectural barriers during each visit. He submitted a receipt from the second visit. We therefore note that Houston did, in fact, return to the [location at issue] before filing this lawsuit, even after he had faced the alleged barriers during his first visit.
>
> Turning to the 30.5 mile distance between Plaintiff Houston's residence and the [location at issue], we understand that this particular store is not the closest supermarket to Houston's home. But Houston explained his reason to go to this store: he travels to Miami–Dade County, where the [location at issue] is located, "on a regular basis," and Houston expects to be there in the future. Houston takes these trips to Miami–Dade County because his lawyer's offices are located there—less than two miles from the [location at issue]. And because of his many ADA lawsuits, Plaintiff Houston "definitely" anticipates going to his lawyer's offices "in the near future." Houston passes the [location at issue] on his way to and from his lawyer's office. According to his affidavit, Houston therefore "would return to the [d]efendant's store to shop if [he] were able to park in the parking spaces, have accessible restrooms, and be able to avail [him]self of the store's other facilities."
>
> Under these particular, undisputed facts, we cannot say that a distance of 30.5 miles makes the threat of future injury conjectural. Of course, different facts may demand a different conclusion. Plaintiff Houston lives in the next county. He does not live hundreds of miles away from the store with no particular reason to return.
>
> In light of the totality of the undisputed facts here, we conclude that Plaintiff

15

Houston has standing to seek injunctive relief for violations of 42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(iv) of the ADA's Title III. *See Shotz*, 256 F.3d at 1081. There is no indication in the record that the alleged architectural barriers in the [location at issue] have been remedied. As a result, there is a 100 percent likelihood that Plaintiff Houston will suffer the alleged injury again when he returns to the store. *Cf. 31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003) (holding that "when the threatened acts that will cause injury are authorized or part of a policy, it is significantly more likely that the injury will occur again").

The likelihood of Houston suffering future injury thus is not contingent upon events that are speculative or beyond his control. *Cf.* [*City of Los Angeles v. Lyons*, 461 U.S. 95, 107–09, 103 S. Ct. 1660, 1668–69 (1983)] (holding that the plaintiff lacked standing for injunctive relief because it was speculative that police officers would arrest him again and that those police officers would then apply an allegedly unconstitutional chokehold again). Rather, the cause of the injury continues to exist, and the likelihood of Houston encountering that cause in the future depends only on Houston's own volition. Houston has been to the store in the past, he wants to return, and his frequent trips directly past the store render it likely that he would do so were it not for the alleged ADA violations in the [location at issue]. Under the totality of the facts here, the threat of future injury to Houston is not merely "conjectural" or "hypothetical." Instead, it is "real and immediate." *See Church v. City of Huntsville*, 30 F.3d 1332, 1337–39 (11th Cir. 1994) (finding standing for homeless plaintiffs to seek injunctive relief to stop certain police practices).

*Id*. at 1336–37.

The Court is required to consider the totality of all relevant facts to determine whether Plaintiff faces a real and immediate threat of future injury. *Id*. at 1337, n.6. Here, Plaintiff lives more than a thousand miles away from the Subject Premises, and visited the Subject Premises only **once**. [ECF No. 1, ¶¶ 4; 13]. Unlike the *Houston* plaintiff, he did not return to the Subject Premises before filing this lawsuit.

Plaintiff argues that he travels to Florida on a regular basis and included a list of

his recent trips in his Complaint. [ECF No. 23, ¶ 12 (citing *Id*. at ¶ 5)]. The list includes 32 trips from March 26, 2021 to October 23, 2023. However, out of those 32 trips, Plaintiff visited Miami-Dade County twice, on or about July 15, 2021 and on or about October 23, 2023. In addition to those two dates, Plaintiff visited Miami-Dade County on December 19, 2023 when he stayed at the Subject Premises, establishing a total of three visits to Miami-Dade County within a four-year period. [ECF No. 1, ¶13].[4] Plaintiff filed this lawsuit on June 3, 2024. [ECF No. 1].

As noted by Plaintiff, as in *Houston*, "[t]here is no indication in the record that the alleged architectural barriers in the [Subject Premises] have been remedied. As a result there is a 100 percent likelihood that" Plaintiff will suffer the alleged injury again *if* he returns to the Subject Premises unless the Court issues "a favorable decision" that redresses the injury. *Houston*, 733 F.3d at 1337–38. However, that "*if*" is determinative of whether he sufficiently alleged a future injury that is actual or imminent.

The Supreme Court discussed the immediacy requirement in *Lujan*:

As we have said in a related context, "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Lyons*, 461 U.S., at 102, 103 S. Ct., at 1665 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–496, 94 S. Ct. 669, 676, 38 L. Ed. 2d 674 (1974)). And the affiants' profession of an "inten[t]" to return to the places they had visited before—where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species—is simply not enough. Such "some day" intentions—**without any description of concrete plans, or indeed even any**

---

[4]    Based on that same list, Plaintiff has visited Broward County 17 times within four years.

**specification of when the some day will be**—do not support a finding of the "actual or imminent" injury that our cases require. *See supra*, at 2136.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564, 112 S. Ct. 2130, 2138, 119 L. Ed. 2d 351 (1992) (emphasis added).

Here, Plaintiff has not offered a description of concrete plans or a specification of when that "some day" will be. He merely argues that he frequently travels to Florida, and "intends to return again to the area and visit the Subject [Premises] on his next trip to Florida where he will also visit the online reservation system." [ECF No. 23, ¶ 12].

He repeatedly refers to *Houston* to illustrate his similarities to the plaintiff there but in reality Plaintiff's situation is distinct because, unlike the *Houston* plaintiff: (1) Plaintiff does not live in a neighboring county and lives more than a thousand miles away in another state; (2) Plaintiff did not visit the Subject Premises more than once; (3) Plaintiff has not provided a definite plan or any specification as to when he will return again; (4) Plaintiff visits South Florida on a yearly basis but mostly remains in Broward County.

Plaintiff cites to *Payne v. Gulfstream Goodwill Indus., Inc.*, No. 15-CV-81120, 2015 WL 6123529, at *3 (S.D. Fla. Oct. 19, 2015) in his response and describes it as a "factually similar case." [ECF No. 23, p. 6]. In *Payne*, the court held that the plaintiff *failed* to sufficiently allege a future harm because:

> Payne simply states that she "desires to visit the [Subject] Property" and has "plans to return to the [Subject] Property." *See* Compl. at ¶¶ 5, 7. Although the requirement of future injury does not appear to be an arduous one to satisfy, *see, e.g., Seco v. NCL (Bahamas), Ltd.*, 588 F. App'x 863, 866 (11th Cir. 2014) (noting that future injury requirement "satisfied" where plaintiff

18

alleged that she would utilize defendant's services "in the near future"), Payne's single assertion amounts to nothing more than a vague, conclusory allegation of future harm, devoid of factual enhancement. While Payne indicates that she regularly travels throughout Broward and Palm Beach Counties to shop, Compl. at ¶ 5, such allegations bear little relationship with the Subject Property. Payne makes no mention of specific, future plans to visit the Subject Property, nor does she include concrete facts which would allow for an inference of the same. *See, e.g[.], Houston*, 733 F.3d at 1339[–]40 (noting that visit to a supermarket along a "routine travel route" demonstrated a propensity to visit the area and an intention to continue to do so in the future).

***

Although Payne need not provide [the] [d]efendant or the Court with a date-certain on which she plans to return to the Subject Property, the single nebulous allegation that she will visit the Subject Property in the future is inadequate. *Cf. Houston*, 733 F.3d at 1339–40 (finding standing where plaintiff's intentions were neither "unspecified 'some day' intentions," nor devoid of "concrete plans"). Amendment is required. *See* Fed. R. Civ. P. 15(a)(2) (requiring district courts to give leave to amend "freely . . . when justice so requires").

2015 WL 6123529, at *4.

Based on these relevant facts, the Undersigned agrees that *Payne* is a "factually similar case" and finds that Plaintiff here has failed to demonstrate his standing by a preponderance of the evidence and sufficiently allege a real and immediate threat of future injury because his future plans are based on "some day" intentions. *Lujan*, 504 U.S. at 564; *see Access for the Disabled, Inc. v. Rosof*, No. 805CV1413T30TBM, 2005 WL 3556046, *2 (M.D. Fla. Dec. 28, 2005) (holding that the plaintiff insufficiently pled the threat of a real future injury even though he alleged that he intended to return to the site "annually" and in the "near future" to verify compliance with ADA, noting that the plaintiff did not

19

reside in the county where the facility was located and did not allege any regular contact with the facility).

Therefore, the Undersigned **respectfully recommends** that Judge Williams **grant** Defendant's motion on this basis, but allow Plaintiff leave to amend his Complaint.

<u>*Defendant's Facial Attack*</u>

Driftwood's facial attack challenges whether Plaintiff has sufficiently alleged subject matter jurisdiction "taking all allegations in the [C]omplaint as true." [ECF No. 19, p. 5].

Driftwood argues that Plaintiff lacks Article III standing to bring this action because he has not established, and cannot reasonably amend to establish, that he has suffered any injury-in-fact, nor that there is any real and immediate threat of any such future injury." [ECF No. 19, p. 4]. Driftwood also argues that Plaintiff's Complaint "lacks standing to seek redress for violations of the ADA he has not encountered, and to recover for injuries to persons who are not parties to this case." *Id*.

To obtain standing under Article III, Plaintiff must satisfy three requirements: (1) "injury-in-fact"; (2) "a causal connection between the asserted injury-in-fact and the challenged action of the defendant;" and (3) "that the injury will be redressed by a favorable decision." *Houston*, 733 F.3d at 1323 (quoting *Shotz v. Cates*, 256 F.3d at 1081 (citing *Lujan*, 504 U.S. at 560–61)). "These requirements are the irreducible minimum required by the Constitution for a plaintiff to proceed in federal court." *Id*. (citing *Ne. Fla.*

*Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 664, 113 S. Ct. 2297, 2302, 124 L .Ed. 2d 586 (1993)).

Plaintiff contends that he satisfied the first requirement because his Complaint alleged that "[i]n encountering the barriers to access at the Subject Premises, and suffering the resulting discrimination, endangerment, and embarrassment—[ ] Plaintiff sustained a lawful injury-in-fact pursuant to the ADA." [ECF No. 23, p. 6 (quoting ECF No. 1, ¶ 19)]. Plaintiff then proceeds to provide factual context establishing how "self-explanatory" his allegations are. *Id.* at 8. However, "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (*quoting GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).

Therefore, the Undersigned will not consider the *newly added* factual context because it is not appropriate for an analysis under a facial or factual attack as it is merely attorney rhetoric. The information is neither in the Complaint nor included as a form of permissible evidence, such as a declaration under penalty of perjury/affidavit.

Driftwood then argues that Plaintiff's Complaint cites to ADA violations but fails to allege how they caused **him** an actual concrete injury. [ECF No. 19, p. 7]. Driftwood

uses Plaintiff's locking mechanism allegation[5] as an example, stating that "[t]he locking mechanism would presumably be utilized with Plaintiff's hands, **for which he does not claim a disability**. Plaintiff, therefore, improperly relies on the possibility that **other individuals with disabilities** may be impacted by a non-compliant locking mechanism to support his claims." *Id*. at 8 (emphasis in original).

Driftwood contends that Plaintiff's Complaint suffers from the same defects mentioned in *Campbell v. Grady's Bar, Inc*., No. 0:10-CV-60648-LSC, 2010 WL 2754328, at *2 (S.D. Fla. July 12, 2010). There, the district court granted the defendant's motion to dismiss because the plaintiff's complaint failed to sufficiently allege an injury-in-fact, instead listing a number of alleged barriers and modifications that he contended violated the ADA. *Id*. "However, his assertions that these barriers 'discriminat[ed] against' him, denied him 'full and equal access,' and 'personally limited'" him are factually-deficient conclusions that must be set aside under *Iqbal*. [The p]laintiff does not allege any facts regarding his specific encounters with these barriers." *Id* (internal citations removed).

Plaintiff argues that unlike *Campbell*, "all necessary facts are pled in which [Driftwood] can 'infer' and reasonably derive that [Plaintiff] [sic] is disabled. . . and naturally the violations in the Complaint are self-explanatory as to how they would block, restrict, or complicate Plaintiff's access to those specific areas[.]" [ECF No. 23, p. 8]. The

---

[5]     "Failure to provide a locking mechanism that is operable with one hand in violation of 2010 ADAAG §[ ]309.4." [ECF No. 1, ¶ 30(c)].

Undersigned disagrees.

Plaintiff's Complaint states that he is a double-leg amputee who uses prosthetic devices or a wheelchair to ambulate. [ECF No. 1, ¶ 5]. It makes no mention that his arms are limited in any way but alleges that Defendants failed "to provide a locking mechanism that is operable with one hand[.]" *Id* at ¶ 30(c). Additionally, he does not have standing to complain about alleged barriers which are not related to his particular disabilities. *Access for the Disabled, Inc. v. First Resort, Inc.*, No. 8:11-CV-2342-T-30EAJ, 2012 WL 4479005, at *6 (M.D. Fla. Sept. 28, 2012) (citing *Steger v. Franco*, 228 F.3d 889, 893 (8th Cir. 2000); *Ass'n for Disabled Ams., Inc. v. Concorde Gaming Corp.*, 158 F. Supp. 2d 1353 (S.D. Fla. 2001)).

Plaintiff contends that his allegations are sufficient pursuant to the "factually similar *Payne*" case, but, the allegations in the *Payne* complaint are not parallel enough to those in the Complaint at issue. Below is an example of one of Plaintiff's allegations, followed by one of the *Payne* plaintiff's allegations:

> o) Failure to provide soap dispensers at the compliant height above the finish floor in violation of 2010 ADAAG §§[ ]308, 309.3.

[ECF No. 1, ¶ 30(o)].

> a. The plaintiff could not use the soap dispenser without assistance as it was mounted too high. Violation: There are dispensers provided for public use in the restroom, with controls outside the ranges prescribed in Section 4.27 of the ADAAG, whose resolution is readily achievable.

[Case No. 9:15-cv-81120-BB, *Payne v. Gulfstream Goodwill Inc. et al*, ECF No. 1, ¶ 9].

Unlike Plaintiff's Complaint, the *Payne* complaint contained "sufficient factual allegations regarding Payne's encounter with the Subject Property to exhibit a concrete injury-in-fact." *Payne*, 2015 WL 6123529, at *3 (citing *Campbell*, 2010 WL 2754328, at *2 (dismissing complaint where it did not include facts from which the court could infer that the plaintiff could not enjoy the facilities and was "left to guess the manner in which the plaintiff suffered alleged discrimination under the ADA")).

Plaintiff's Complaint also states that the list of violations "is not to be considered all-inclusive of the barriers, conditions or violations encountered by Plaintiff and/or which exist on the Subject Premises[,]" and that he "requires an inspection of the Subject Premises in order to photograph, measure, and determine all of the discriminatory acts violating the ADA." [ECF No. 1, ¶¶ 31–32]. The *Payne* Court described this type of language as "additional vague, and admittedly hypothetical, injuries[,]" found that "[t]hese ambiguous and conclusory allegations, without more, [are] insufficient to confer standing[,]" and that a plaintiff "may not assert violations which [he] did not encounter." *Payne*, 2015 WL 6123529, at *3 n.2 (citing *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 416 (11th Cir. 2011) (rejecting argument "that the statutory language of the ADA allows for standing to bring an entire facility into compliance once one barrier is encountered").

Driftwood notes that "[b]oth Plaintiff and his counsel are aware that Plaintiff does not have standing to bring claims based on unknown or identified violations **because this Court has expressly told them so on multiple occasions, including very recently**." [ECF

24

No. 19, pp. 13–14 (emphasis in original) (citing *Betancourt v. Pinho*, No. 24-60141-CIV, 2024 WL 1316235, at *2 (S.D. Fla. Mar. 28, 2024) ("[The] [p]laintiff has deceptively implied that including unknown barriers in the Complaint is just fine. It is not."); *Betancourt v. MS Prop. Mgmt. L.L.C.*, No. 0:24-CV-60016, 2024 WL 2417143, at *2 (S.D. Fla. Apr. 23, 2024), *report and recommendation adopted sub nom. Betancourt v. Sally Beauty Supply, LLC*, No. 0:24-CV-60016-DPG, 2024 WL 2377356 (S.D. Fla. May 23, 2024) (agreeing with the analysis from *Pinho*)] *see Betancourt v. A & E Realty, L.L.C.*, No. 9:23-cv-80066 (S.D. Fla. May 12, 2023) ("[T]he Court agrees with [the] [d]efendant that [the] [p]laintiff cannot base a claim upon an unknown violation.").

Plaintiff did not respond to Driftwood's contention that he knew he did not have standing to bring claims on unknown barriers. "Failure to respond to an argument may result in waiver." *W. 32nd/33rd Place Warehouse Condo. Ass'n, Inc. v. W. World Ins. Co.*, No. 22-CV-21408, 2023 WL 6317993, at *4 (S.D. Fla. Aug. 21, 2023) (citing *Five for Ent. S.A. v. Rodriguez*, No. 11-24142-CIV, 2013 WL 4433420, at *14 (S.D. Fla. Aug. 15, 2013)("A failure to address issues in response to a motion is grounds for finding that the claims have been abandoned."); *Altare v. Vertical Reality MFG, Inc.*, No. 19-CV-21496, 2020 WL 209272, at *2 (S.D. Fla. Jan. 14, 2020)("[The] [p]laintiff did not respond to this argument and, consequently, the Court deems any response waived.")).

The Undersigned finds that Plaintiff waived his argument related to the unknown barriers because, instead of addressing Driftwood's arguments (including its specific

cites to **Plaintiff's** other cases), Plaintiff merely explained his intent behind filing the lawsuit, and rationalized his problematic language as a way to help make the litigation process more efficient. [ECF No. 23, pp. 14–15].

Driftwood additionally argues that Plaintiff's Complaint should be dismissed because he seeks improper relief in requesting that Driftwood's property be closed until the barriers are removed. [ECF No. 19, p. 18]. Plaintiff contends that Defendant's argument should be rejected because it failed to include any supporting authority, and because "courts within this district have stated that they do have authority under the ADA to order that premises be closed." [ECF No. 19, p. 14 (citing *MS Prop. Mgmt. L.L.C.*, 2024 WL 2417143, at *3 (citing additional cases in support))]. The Undersigned agrees with Plaintiff and finds that his Complaint seeks proper relief.

However, even though his Complaint seeks proper relief in that it is theoretically available, it still fails to properly establish standing under Article III based on the reasons outlined earlier. *See Houston*, 733 F.3d at 1328 (stating that ADA tester plaintiff must prove the requirements of Article III standing, including injury-in-fact, causation, and redressability).

Finally, Driftwood requests that if its Motion is not granted then "at a minimum, [Driftwood] seeks the entry of an order striking immaterial parts of Plaintiff's Complaint." [ECF No. 19, p. 18]. Specifically, Driftwood highlights the following "extraneous allegations as well as improper legal briefing":

(1) Attempted reservation of rights to obtain relief for additional and unknown violations once an inspection is done to "determine all of the discriminatory acts violating the ADA." ; (2) Reference to "the Florida Building Code" in the opening paragraph of the Complaint, then failure to specifically allege any violations of that law or even allege that the [Florida Building Code]gives rise to a cause of action (it does not); (3) Plaintiff's statement that he is a qualified individual under the "FACBC" without explaining the acronym; and (4) Plaintiff's irrelevant to this proceeding and improperly alleged to garner sympathy for a person who might otherwise be a  wonderful person and hero, but who is still a serial plaintiff who engages in impermissible drive-by litigation.

*Id*. at 19 (internal citations omitted).

As previously stated, the Undersigned is recommending that Driftwood's Motion be granted and that Judge Williams provide Plaintiff with leave to amend his Complaint. Therefore, it would be premature to strike anything from the Complaint without giving Plaintiff a chance to amend it first. However, if Plaintiff's Amended Complaint includes "any redundant, immaterial, impertinent, or scandalous matter[,]" then under Federal Rule of Civil Procedure 12(f) the Court may strike such matters from Plaintiff's Amended Complaint like how Judge Singhal did earlier this year. *See Pinho*, 2024 WL 1316235, at *3.

## III.   Conclusion

Plaintiff's Complaint is full of ambiguous and conclusory allegations which assert vague and hypothetical injuries. Out of the three Article III standing requirements, Plaintiff's Complaint satisfies only the third requirement: "that the injury will be redressed by a favorable decision." *Houston*, 733 F.3d at 1328. His Complaint does not sufficiently allege an injury-in-fact nor a causal connection between that injury and

Driftwood's actions.

Therefore, the Undersigned **respectfully recommends** that Judge Williams **grant** Driftwood's Motion to Dismiss and dismiss the Complaint, albeit **without prejudice** and with **leave** to amend.

## IV.   <u>Objections</u>

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, September 18, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to:</u>**
The Honorable Kathleen M. Williams
All Counsel of Record