UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RUDOLPH BETANCOURT,
     Plaintiff,
vs.

CORPORACION HOTELERA PALMA
LLC. d/b/a TOWNE PLACE SUITES
MIAMI LAKES, OPERADORA
HOTELERA PALMA LLC., and
DRIFTWOOD HOSPITALITY
MANAGEMENT, LLC,
     Defendants.

Case No: 1:24-cv-22126-KMW

## FIRST AMENDED COMPLAINT

Plaintiff, RUDOLPH BETANCOURT (hereinafter, "Plaintiff"), by and through undersigned counsel, hereby files this First Amended Complaint and sues Defendants, CORPORACION HOTELERA PALMA LLC. d/b/a TOWNE PLACE SUITES MIAMI LAKES, OPERADORA HOTELERA PALMA LLC., and DRIFTWOOD HOSPITALITY MANAGEMENT, LLC (hereinafter collectively, "Defendants"), and alleges as follows:

### JURISDICTION & VENUE

1.     This Court has original jurisdiction over the action pursuant to 28 U.S.C., §§1331 and 1343 for Plaintiff's claims arising under the Americans with Disabilities Act, 42 U.S.C. §12181, *et seq*., (hereinafter, the "ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 (hereinafter, the "ADAAG"); and for declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

2.     The subject premises is a hotel located at 8079 NW 154th St., Miami, Florida 33016 (hereinafter, the "Subject Premises").

1

3.      All events giving rise to this lawsuit occurred in Florida. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the Subject Premises is located in this judicial district.

## PARTIES

4.      Plaintiff, RUDOLPH BETANCOURT, is a double-leg amputee who uses prosthetic devices or a wheelchair to ambulate.

5.      Plaintiff has difficulty pinching and grasping.

6.      Plaintiff is a resident of Fenwick, Michigan, is *sui juris*, and is a qualified individual with a disability under the ADA.

7.      Plaintiff enjoys the South Florida weather and the multiple sporting events, festivals, and events that occur throughout South Florida. Plaintiff has friends and family in Florida and frequent visits several times a year.

8.      While in Miami Plaintiff frequently dines out and is socially active enjoying what Miami has to offer.

9.      Plaintiff's frequent visits to Florida include:

   a.   Coral Springs, FL on or about March 26, 2021,
   b.   Pompano Beach, FL on or about March 28, 2021,
   c.   West Palm Beach, FL on or about June 30, 2021,
   d.   Miami Beach, FL on or about July 15, 2021,
   e.   Jacksonville, FL on or about September 14, 2021,
   f.   Weston, FL on or about September 16, 2021,
   g.   Deerfield Beach, FL on or about September 17, 2021,
   h.   Weston, FL on or about October 10, 2021,
   i.   Sunrise, FL on or about October 11, 2021,
   j.   Orlando, FL on or about March 5, 2022,
   k.   Titusville, FL on or about July 9, 2022,
   l.   Orlando, FL on or about July 21, 2022,
   m.   Pompano Beach, FL on or about July 22, 2022,

**n.** Boca Raton, FL on or about July 23, 2022,

**o.** Stuart, FL on or about July 25, 2022,

**p.** Boca Raton, FL on or about September 1, 2022,

**q.** Margate, FL on or about January 5, 2023

**r.** Ft. Lauderdale, FL on or about January 6, 2023,

**s.** Pembroke Pines, FL on or about January 6, 2023,

**t.** Coral Springs, FL on or about January 7, 2023,

**u.** Plantation, FL on or about January 7, 2023,

**v.** Weston, FL on or about January 8, 2023,

**w.** Melbourne, FL on or about June 12, 2023,

**x.** Davenport, FL on or about June 13, 2023,

**y.** Pompano Beach, FL on or about June 14, 2023,

**z.** Melbourne, FL on or about July 10, 2023,

**aa.** Ft. Lauderdale, FL on or about July 11, 2023,

**bb.** Davenport, FL on or about July 11, 2023,

**cc.** Pompano Beach, FL on or about July 12, 2023,

**dd.** Ft. Lauderdale, FL on or about September 12, 2023.

**ee.** Broward County, Florida on or about October 20-23, 2023,

**ff.** Miami Dade County, Florida on or about October 23-24, 2023, and

**gg.** Miami Dade county Florida on or about August 2024.

**10.** Plaintiff is also an ADA tester and advocate, actively working to ensure ADA compliance across public accommodations. He has been involved in numerous ADA lawsuits aimed at addressing accessibility barriers, including cases handled by undersigned counsel.

**11.** Defendant, CORPORACION HOTELERA PALMA LLC., is a limited liability company which is authorized to and does transact business in the State of Florida and within this judicial district.

**12.** Pursuant to the Miami-Dade Property Appraiser's Office, Defendant, CORPORACION HOTELERA PALMA LLC., is the owner and/or operator/manager of the real property located on or 8079 NW 154th St Miami, Florida 33016 ("Subject Premises"). Further,

3

according to the Miami-Dade Tax Collector's Office/Florida Department of Business and Professional Regulation, the Defendant, CORPORACION HOTELERA PALMA LLC., was licensed on June 1, 1999, as a Hotel and occupies the Subject Premises as a hotel known as "TOWNE PLACE SUITES MIAMI LAKES."

13.     Upon information and belief, Defendant, OPERADORA HOTELERA PALMA LLC., is the franchisee/owner of the "TOWNE PLACE SUITES MIAMI LAKES" brand located at the Subject Premises.

14.     The Subject Premises is owned and/or operated by the Defendants and is a public accommodation required by law to comply with the ADA and ADAAG

15.     As the Franchisor and/or owner Defendant, OPERADORA HOTELERA PALMA LLC., is a proper Defendant before this Court. Defendant, OPERADORA HOTELERA PALMA LLC., is registered as a limited liability company which is authorized to, and does, conduct business in the State of Florida. Defendant, OPERADORA HOTELERA PALMA LLC., also operates and/or maintains, in full or in part, the website and/or information contained on the website which allows for online reservations of guestrooms at www.marriott.com/en-us/hotels/miats-towneplace-suites-miami-lakes/rooms/l/ (hereinafter, the "Website") and the Website's online reservations system ("ORS").

16.     Upon information and belief, Defendant, DRIFTWOOD HOSPITALITY MANAGEMENT, LLC, is the manager and/or operator which was contracted and/or hired to manage the day-to-day operations of the "TOWNE PLACE SUITES MIAMI LAKES" located at the Subject Premises.

17.     As the manager and/or operator, Defendant, DRIFTWOOD HOSPITALITY MANAGEMENT, LLC, is a proper Defendant before this Court. Defendant, DRIFTWOOD

HOSPITALITY MANAGEMENT, LLC, is registered as a limited liability company which is authorized to, and does, conduct business in the State of Florida. Defendant, DRIFTWOOD HOSPITALITY MANAGEMENT, LLC, also operates and/or maintains, in full or in part, the website and/or information contained on the website which allows for online reservations of guestrooms at www.marriott.com/en-us/hotels/miats-towneplace-suites-miami-lakes/rooms/l/ (hereinafter, the "Website") and the Website's online reservations system ("ORS").

## FACTUAL ALLEGATIONS

18.    On or about December 19, 2023, Plaintiff booked a room at the Subject Premises via telephone. Plaintiff specifically requested an "Accessible Room" and relied on the hotel's representations that such a room would meet his accessibility needs.

19.    Upon arrival at the Subject Premises, Plaintiff discovered that the room provided was not accessible as advertised.

20.    After realizing that the room was not accessible, Plaintiff reviewed the Defendants online reservation system. Plaintiff encountered the following issues:

   a. A general list of accessibility features was present on the main page of the ORS, but this list was not specific to the rooms.

   b. The "Rooms" page of the ORS provided limited information about accessibility. It indicated that only the Studio rooms were listed as accessible, while none of the two (2) Bedroom Suites were accessible rooms.

   c. Plaintiff visited the hotel's online reservation system (ORS) to search for additional information and book an accessible room, but the system did not provide any further details nor did it allow for the direct reservation of an accessible room.

   d. Plaintiff also checked a third-party website, Booking.com, to see if a third-party site could provide more detailed information about the accessible rooms. However, Booking.com did not offer any additional information to ensure that the room would meet Plaintiff's accessibility needs.

21.     Said barriers to access on the ORS cause an inconvenience that does not occur when able-bodied patron use the same ORS.

22.     On March 15, 2012, the revised regulations implementing Title III of the ADA took effect, imposing significant new obligations on inns, motels, hotels and other "places of lodging." 28 C.F.R. §36.302(e)(l) provides that:

> Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party –
>
> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
>
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or his accessibility needs;
>
> (iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;
>
> (iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and
>
> (v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

23.     In promulgating the new requirements, the Department of Justice made clear that individuals with disabilities should be able to reserve hotel rooms with the same efficiency, immediacy, and convenience as those who do not need accessible guestrooms. *28 C.F.R. Part 36, Appx. A.*

24.     Hotels (and motels) are required to identify and describe all accessible features in the hotel and guestrooms; "[t]his requirement is essential to ensure individuals with disabilities receive information they need to benefit from the services offered by the place of lodging." *28 C.F.R. Part 36, Appx. A*. Moreover, "a public accommodation's designation of a guestroom as "accessible" does not ensure necessarily that the room complies with all of the 1991 Standards." *28 C.F.R. Part 36, Appx. A*. Labeling a guestroom as "accessible" or "ADA" is not sufficient.

25.     In addition, hotel rooms that are in full compliance with current standards may differ, and individuals with disabilities must be able to ascertain which features – in new and existing facilities – are included in the hotel's accessible guest rooms. For example, under certain circumstances, an accessible hotel bathroom may meet accessibility requirements with either a bathtub or a roll in shower. The presence or absence of particular accessible features such as these may mean the difference between a room that is usable by a particular person with a disability and one that is not.  *28 C.F.R. Part 36, Appx. A*. Accordingly, Defendant is required to set forth specific accessible features and not merely recite that a guestroom is "accessible" or "ADA" or list accessibility features that may (or may not) be offered within a particular room.

26.     For hotels in buildings constructed after the effective date of the 1991 Standards, it is sufficient to advise that the hotel itself is fully ADA compliant, and for each accessible guestroom, to specify the room type, the type of accessible bathing facility in the room, and the communications features in the room. *28 C.F.R. Part 36, Appx. A*.

27.     However, for hotels in buildings constructed prior to the 1991 Standards, information about the hotel should include, at a minimum information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features <u>that do not comply</u> with the 1991 Standards. For example, if the door to the "accessible"

room or bathroom is narrower than required, this information should be included (e.g., door to guest room measures 30 inches clear). [emphasis added]. *28 C.F.R. Part 36, Appx. A.*

28.　　The Hotel is a place of public accommodation that owns and/or leases and operates a place of lodging pursuant to the ADA. The Hotel is in a building constructed prior to the 1991 Standards.

29.　　The Website (and all other online reservation platforms used by the Hotel) allow reservations for the Hotel to be taken online. The Defendant has control over information provided to the public about the Hotel through the Website and/or other online platforms.

30.　　It is important to Plaintiff that any hotel at which he researches is accessible. Plaintiff frequently researches and assesses the accessible features and guestrooms of hotels online.

31.　　A specific, although not exclusive, list of unlawful violations on the Website and ORS, include:

### Online Reservations System

**(A)** The on-line reservation system does not permit an individual with disabilities to reserve an accessible room absent actually calling an agent at the listed phone numbers. However, prospective guests who are able–bodied have no such extra step and are fully able to complete their room reservations and transactions on-line at the web site absent calling an agent.

32.　　During his stay at the Subject Premises, Plaintiff personally encountered several barriers to access due to his disability, which violated the ADA and the ADAAG and causing Plaintiff an injury in fact. These barriers include but are not limited to:

### Exterior Accessible Routes

a)　Failure to provide an access aisle adjacent to the passenger vehicle pull-up space, making it difficult for Plaintiff to exit his vehicle, in violation of ADAAG §§ 209.2.1 and 503.

### Accessible Public Unisex Restroom

**b)**　Failure to provide a locking mechanism that is operable with one hand in violation of 2010 ADAAG §309.4.

8

**c)** Failure to provide toilet paper dispensers in the compliant location in violation of 2010 ADAAG §§603 and 604.7.

## **Dining Area**

**d)** Public dining areas did not provide an adequate number of accessible seating options, limiting Plaintiff's ability to dine comfortably, in violation of ADAAG §§ 226 and 226.1.

## **Accessible Room**

**e)** Failure to provide the minimum number of rooms with mobility features, in violation of ADAAG §§ 224, 224.2, and 806.2.

**f)** Security latches on the doors of the room were mounted too high for Plaintiff to reach without assistance, creating difficulty of locking the door independently, in violation of ADAAG §§ 308 and 309.3.

**g)** The iron in the room was mounted too high for Plaintiff to reach, in violation of ADAAG §§ 308 and 309.3.

**h)** Grab bars in the restroom were not properly positioned, hindering Plaintiff's ability to safely transfer from his wheelchair to the toilet, in violation of ADAAG §§ 603, 604.5.1, and 604.5.2.

**i)** Clearance around the toilet was inadequate, making it difficult for Plaintiff to maneuver his wheelchair and transfer safely, in violation of ADAAG §§ 604.3 and 604.3.2.

**j)** The mirror in the room was mounted too high from the floor, preventing Plaintiff from using it properly, in violation of ADAAG §§ 603 and 603.3.

**k)** Failure to provide a bathtub seat capable of secure placement, creating difficuly for Plaintiff in utilizing the bathtub without assistance, in violation of ADAAG §§ 607.3 and 610.2.

**l)** Shower spray unit was mounted too high, creating difficulty for Plaintiff from using the shower without assistance, in violation of ADAAG §§ 308, 309.3, and 607.6.

**m)** Soap dispensers in the restroom were mounted too high, making them inaccessible for Plaintiff, in violation of ADAAG §§ 308 and 309.3.

## **Fitness Area**

**n)** Failure to provide compliant maneuvering clearance to exit the fitness area in violation of 2010 ADAAG §§404, 404.2.4, and 404.2.4.1.

**o)** Failure to provide a paper towel dispenser at the compliant height above the finish floor in violation of 2010 ADAAG §§308, 309.3.

**p)** Failure to provide compliant clear floor space in violation of 2010 ADAAG §§236 and 1004.

**Pool Area**

**q)** Failure to provide a compliant pool lift in violation of 2010 ADAAG §§242, 1009.2, 1009.2.2, and 1009.2.6.

*See* **Declaration of Plaintiff** attached hereto as Exhibit "A" and incorporated herein by reference.

**33.** Plaintiff requires an inspection of the Subject Premises in order to photograph, measure and determine all of the discriminatory acts violating the ADA.

**34.** The removal of the physical barriers, dangerous conditions, and ADA violations set forth herein is readily achievable and can be accomplished and carried out without much difficulty or expense pursuant to 42 U.S.C. § 12182(B)(2)(A)(iv); 42 U.S.C. § 12181(9); and 28 C.F.R, § 36.304.

**35.** The ADA defines "readily achievable as "easily accomplishable and without much difficult or expenses."42 U.S.C. §12181(9) Congress included in the ADA factors to be considered in evaluating whether removal of a barrier is "readily achievable." These factors are (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity, and (10)geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

Garthright-Dietrich v. Atlanta Landmarks, Inc., 452 F. 3d 1269, 1272-73 (11th Cir. 2006).

**36.** The obligation to engage in readily achievable barrier removal is a continuing one. Over time, barrier removal that initially was not readily achievable may later be required because of changed circumstances. DOJ ADA Title III Technical Assistance Manual, Section III-4.4400 Continuing obligation.

**37.** Because, *inter alia,* this Subject Premises was designed, constructed, and received its Certificate of Occupancy on June 1, 1999, Plaintiff asserts that said ADA violations are intentional in nature

and will not be corrected absent Court intervention, thus exacerbating the intentional legal harm and injury to which Plaintiff has been and will continue to be subjected in the future.  Further, Marriot International, Inc., is a worldwide company that has been sued for physical barriers as well as website violations in the past, has extensive staff at it's disposal, and still has not ensured that the Website and ORS systems for the properties it manages are ADA and ADAAG compliant.

38.    Plaintiff has a realistic, credible, and continuing threat of discrimination by the Defendants as long as the Subject Premises remains in non-compliance with the ADA.

39.    Independent of his personal desire to access this place of public accommodation as required by law, Plaintiff is an advocate of the rights of similarly situated persons with disabilities and an advocate for asserting his own civil rights.  However, Plaintiff is deterred from returning to the Subject Premises as long as the Defendants continue to operate the Subject Premises in violation of the ADA and ADAAG.

40.    On or about August 27, 2024, Plaintiff made a subsequent reservation via telephone for an "Accessible" room with a roll-in shower at the Subject Premises. Despite being told over the telephone that such a room was available, upon arrival, Plaintiff was informed that the room was unavailable and was given the same non-accessible room as the December 19, 2023 stay.

41.    During the August 27, 2024 stay at the Subject Premises, Plaintiff also experienced issues with his credit card and cell phone service at the front desk of the Subject Premises. The front desk staff initially refused to allow Plaintiff to use their telephone to contact Plaintiff's credit card company, compounding the difficulties Plaintiff faced due to his disability. *See* Exhibit "A."

42.    The barriers to access encountered by Plaintiff during both his visit to the Subject Premises denied Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by Defendants, as required by Title III of the ADA.

43.    Plaintiff also experienced frustration and embarrassment during both visits due to the lack of accessible features. As a result, Plaintiff experienced an injury in fact as he was unable to independently use the Subject Premises' amenities and faced social discomfort when relying on others for assistance.

44.     Attached hereto as Composite Exhibit "B" are true and correct copies of the hotel receipts for Plaintiff's stay at the Subject Premises on or about December 19, 2023 and Plaintiff's subsequent stay at the Subject Premises on or about August 27, 2024; further substantiating his claims and undisputed evidence of his intent to return to the Subject Premises in the near future.  Plaintiff incorporates the same herein by reference.

45.     Plaintiff frequently visits South Florida and has already made several trips this year.

46.     Plaintiff anticipates frequent trips to Miami-Dade County in the near future, where his attorney Mr. Goldstein's offices are located at 8101 Biscayne Blvd., Ste. 504, Miami, Florida. *See* Exhibit "B." Plaintiff has multiple ongoing ADA cases and anticipates in-person meetings and consultations with his attorneys. Plaintiff's visits to Miami-Dade County take him near the Subject Premises, where he intends to return in the very near future, which is located only 12.6 miles from Plaintiff's attorneys' offices. *See* copy of Google Maps driving directions attached hereto as Exhibit "C" and incorporated herein by reference.

47.     Plaintiff intends to return to the Subject Premises as a tester and as a bona fide costumer, including his next visit on February 13, 2025 where he has already reserved an accessible guestroom via the Defendants' Online Reservation System.

48.     Plaintiff intends to return to the Defendants' online reservations system as a tester and as a bona fide costumer.

49.     Plaintiff plans to return to the Subject Premises on February 13, 2025 and hopes that the barriers are removed and he can confirm the Defendants' compliance with the ADA. Additionally, Plaintiff will revisit the Defendants' online reservation system (ORS) to verify that it provides accurate and accessible information for individuals with disabilities.

50.     Plaintiff has a realistic, credible, and continuing threat of discrimination because the barriers at the Subject Premises have not been remedied. *See* Exhibit "A." Plaintiff is

committed to returning to the Subject Premises once the barriers are removed and the hotel is brought into full compliance with the ADA. *See* Exhibit "B."

51.     Defendants have discriminated against Plaintiff and others with disabilities by denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Premises, and ORS, as prohibited by 42 U.S.C., § 12182, *et. seq*., and by failing to remove architectural barriers as required by 42 U.S.C., § 12182(b)(2)(A)(iv), and further by failing to provide current and adequate accessibility information and to allow reservations of accessible guestrooms through its ORS, and will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants are compelled to remove all physical barriers that exist at the Subject Premises, and to comply with the ADA and ADAAG by providing accurate and adequate accessibility information on the Website and allowing persons with disabilities to reserve accessible guestrooms through the ORS, including those specifically set forth herein, and make the Subject Premises, and ORS, accessible to and usable by persons with disabilities, including Plaintiff.

52.     Plaintiff has suffered and continues to suffer direct and indirect injury as a result of the ADA violations that exist at the Subject Premises, and ORS, and the actions or inactions described herein.

53.     Plaintiff is without adequate remedy at law and is suffering irreparable harm and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants are required to remove the physical barriers, dangerous conditions, and ADA violations that exist at the Subject Premises, and ORS, including those set forth herein.

54.     Plaintiff has been obligated to retain undersigned counsel for the filing and prosecution of this action. The Plaintiff is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants, pursuant to 42 U.S.C., §§ 12205 and 12217.

55.     Pursuant to 42 U.S.C. §12188(a), this Court is provided with authority to grant injunctive relief to Plaintiff, including an order to alter the Subject Premises to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, and closing the Subject Premises until the requisite modifications are completed.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court issue a permanent injunction enjoining Defendants from continuing is discriminatory practices, ordering Defendants to remove the physical barriers to access and alter the Subject Premises to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, closing the Subject Premises until the barriers are removed and requisite alterations are completed, and awarding Plaintiff his reasonable attorney's fees, expert fees, costs and litigation expenses incurred in this action.

Respectfully submitted,

s/ *Glenn R. Goldstein*          /
Glenn R. Goldstein (FBN: 55873)
   *Attorney for Plaintiff*
Glenn R. Goldstein & Assoc., PLLC
8101 Biscayne Blvd., Ste. 504
Miami, Florida 33138
(561) 573-2106
 ggoldstein@g2legal.net

s/ *Lauren N. Wassenberg*          /
Lauren N. Wassenberg (FBN: 34083)
   *Attorney for Plaintiff*
Lauren N. Wassenberg & Assoc., P.A.
33 SE 4th St., Ste. 100
Boca Raton, Florida 33432
(305) 804-54345
 wassenbergl@gmail.com

# EXHIBIT "A"

# COPY OF
# DECLARATION OF PLAINTIFF
# RUDOLPH BETANCOURT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RUDOLPH BETANCOURT

      Plaintiff,

vs.

CORPORACION HOTELERA PALMA
LLC. d/b/a TOWNE PLACE SUITES
MIAMI LAKES, OPERADORA
HOTELERA PALMA LLC., and
DRIFTWOOD HOSPITALITY
MANAGEMENT, LLC,

      Defendants.

Case No: 1:24-cv-22126-KMW

## <u>DECLARATION OF PLAINTIFF, RUDOLPH BETANCOURT, MADE PURSUANT TO 28 U.S.C. §1746</u>

I, RUDOLPH BETANCOURT, certify under penalty of perjury that the following statements are true and of my own personal knowledge:

1. My name is Rudolph Betancourt. I am a resident of Fenwick, Michigan. I am over the age of eighteen (18) and competent to testify and am otherwise *sui juris*.

2. I am a United States Marine Corps. Veteran and a double leg amputee who uses prosthetic devices or a wheelchair to ambulate.

3. I have difficulties pinching and grasping.

4. I am also an advocate for the rights of disabled individuals and an ADA tester. I have been involved in ADA lawsuits, many of which are handled by my attorneys at Glenn R. Goldstein & Associates, PLLC and Lauren N. Wassenberg & Associates, P.A. As part of my advocacy, I ensure compliance with the ADA.

5. I frequently travel to Florida for leisure, visit friends, enjoy the weather and attend events. My attorney, Mr. Goldstein's office is located in Miami-Dade County at 8101 Biscayne Blvd., Ste. 504, Miami, Florida. I anticipate visiting my attorney's office in the near future. My visits to his office take me near the Towne Place Suites Miami Lakes which is located

1

Doc ID: 9ea5fdd1e29be71ebd77ff237936db2535da7c1c

at 8079 NW 154th St Miami, Florida 33016—approximately 12.6 miles from my attorney's office.

6.     I have visited Miami Dade county in October of 2023, December of 2023, February of 2024, and August of 2024.

7.     I also visit other counties in South Florida regularly which are very close to Miami Dade and Towne Suites Hotel Miami Lakes.

8.     On or about December 19, 2023, I visited the Towne Place Suites Miami Lakes and attempted to avail myself of its services. I had booked an "Accessible Room" via telephone, but upon arrival, I discovered that the room was not in fact accessible as advertised and confirmed.

9.     After realizing the room was not accessible, I reviewed the hotel's online reservation system in an attempt to check the accessibility features of the rooms. I found a general list of accessibility features on the main page; however, the list was not specific to the rooms.

10.    I observed that the "Rooms" page of the online reservation system which provided limited accessibility information.

11.    I also visited the hotel's online reservation system (ORS) but found no additional information about room accessibility, nor could I find an option to directly reserve an accessible room online.

12.    Finally, I checked Booking.com to see if a third-party website could provide more detailed information about the accessible rooms. However, Booking.com did not offer any additional information to ensure that the room I had booked by phone would meet my accessibility needs.

13.    During my stay, I encountered several ADA violations that directly impacted my ability to access the hotel's services due to my disability. The barriers at the property that I personally encountered included all the violations listed in paragraph 14 of the First Amended Complaint.

14.    These barriers not only denied me full and equal access to the hotel's services but also caused significant frustration and embarrassment. As a result of these violations, I was

2

Doc ID: 9ea5fdd1e29be71ebd77ff237936db2535da7c1c

unable to independently access the ORS, several of the hotel's amenities, and my stay was negatively impacted.

15.    I returned to the Towne Place Suites Miami Lakes on August 27, 2024, for another stay. I made a reservation over the phone for an accessible room. I was told they had an accessible with a roll-in shower. However, upon arrival on that same day, I was informed that the room was unavailable. Upon arrival, when the front desk personnel saw me in person, they informed me that the room with the roll-in shower was unavailable and I was instead given the same non-accessible room as my initial stay in December 2023, which did not have a roll-in shower.

16.    Additionally, during my second visit, I experienced issues with using my credit card and cell phone at the front desk. I was unable to get internet service on my phone and the front desk was initially hesitant to let me use their phone to contact my credit card company. After some time, they allowed me to use the phone, and the credit card company confirmed that no charges had gone through. I eventually resolved the issue with the credit card, and was able to get the room, though it was still the same inaccessible room as before.

17.    I am planning a trip to Miami-Dade County during the second week of February 2025. My next known stay at the Towne Place Suites Miami Lakes has been booked for February 13, 2025, via the online reservations system (ORS) for Towne Place Suites Miami Lakes.

18.    I frequently visit Florida for vacation and plan to return to Miami-Dade County for my legal matters and anticipate in-person meetings at my attorneys' offices. As a tester and advocate for ADA compliance, I am committed to returning to the Towne Place Suites Miami Lakes to ensure that the hotel remedies the accessibility barriers I encountered and to avail myself of its services due to its close proximity to my attorneys' office. Additionally, I will revisit the hotel's online reservation system (ORS) to verify that it provides accurate and accessible information for individuals with disabilities.

19.    Attached to this declaration as Exhibit A are true and correct copies of the receipts from my stay at the Towne Place Suites Miami Lakes on December 19, 2023, and August 27, 2024.

Doc ID: 9ea5fdd1e29be71ebd77ff237936db2535da7c1c

20.   I have a realistic, credible, and continuing threat of discrimination because the barriers at the Towne Place Suites Miami Lakes have not been remedied. I fully intend to return to the hotel—again—and use its services again once the barriers are removed.

   *Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.*

10 / 02 / 2024
_____
Date

Rudolph Betancourt

Doc ID: 9ea5fdd1e29be71ebd77ff237936db2535da7c1c

# COMPOSITE
# EXHIBIT "B"

# COPY OF
# HOTEL RECEIPTS



# TOWNEPLACE
## SUITES®
BY MARRIOTT

TownePlace Suites® Miami Lakes
8079 NW 154th Street, Miami Lakes, FL 33016 P 305.512.9191
Marriott.com/MIATS

Rudolph Betancourt                                          Room: 305
Riverwoods IL 60015                                         Room Type: STDO
Leisure                                                     Number of Guests: 1
                                                            Rate: $98.00          Clerk: SJR
Arrive: 20Dec23        Time: 10:32PM      Depart: 21Dec23   Time: 10:23AM         Folio Number: 64711

| DATE | DESCRIPTION | CHARGES | CREDITS |
|---|---|---|---|
| 20Dec23 | Room Charge | | |
| 20Dec23 | Occupancy Sales Tax | 98.00 | |
| 20Dec23 | County Tax | 6.86 | |
| 21Dec23 | Visa | 5.88 | |
| | | | 110.74 |

CARD #: VIXXXXXXXXXXX5753XXXX
Card Type: VISA Card Entry: CHIP Approval Code: 05489C App
Label: VISA CREDIT AID: A000000031010

**BALANCE:**    0.00

Marriott Bonvoy Account # XXXXX7817. Your Marriott Bonvoy points/miles earned on your eligible earnings will be credited to your account. Check your Marriott Bonvoy account statement or your online statement for updated activity.

Marriott and A Woman's Nation join forces to increase appreciation for hotel housekeepers whose care and hard work often go unnoticed.

See our "Privacy & Cookie Statement" on Marriott.com.

Operated under license from Marriott International, Inc. or one of its affiliates.

To plan your next stay, visit TownePlaceSuites.com.



# TOWNEPLACE
## SUITES®
### BY MARRIOTT

**TownePlace Suites® Miami Lakes**
8079 NW 154th Street, Miami Lakes, FL  33016 P 305.512.9191
**Marriott.com/MIATS**

| | |
|---|---|
| Rudolph Betancourt | Room: 305 |
| 111 | Room Type: STDO |
| Riverwoods IL 60015 | Number of Guests: 1 |
| Pleasure | Rate: $112.00 |
| | Clerk: SJR |
| Arrive: 27Aug24    Time: 08:41PM    Depart: 28Aug24 | Time: 10:24AM |
| | Folio Number: 74545 |

| DATE | DESCRIPTION | CHARGES | CREDITS |
|---|---|---|---|
| 27Aug24 | Room Charge | 112.00 | |
| 27Aug24 | Occupancy Sales Tax | 7.84 | |
| 27Aug24 | County Tax | 6.72 | |
| 28Aug24 | Master Card | | 126.56 |

CARD #: MCXXXXXXXXXXXX2294/XXXX
Card Type: MASTERCARD Card Entry: MANUAL Approval Code:
02765Y

**BALANCE:**    **0.00**

**Marriott Bonvoy Account # XXXXX7817.** Your Marriott Bonvoy points/miles earned on your eligible earnings will be credited to your account. Check your Marriott Bonvoy account statement or your online statement for updated activity.

Marriott and A Woman's Nation join forces to increase appreciation for hotel housekeepers whose care and hard work often go unnoticed.

See our "Privacy & Cookie Statement" on Marriott.com.

Operated under license from Marriott International, Inc. or one of its affiliates.

To plan your next stay, visit TownePlaceSuites.com

# EXHIBIT "C"

# COPY OF
# GOOGLE MAPS
# DRIVING DIRECTIONS

8101 Biscayne Boulevard, Miami, FL to TownePlace Suites Miami Lakes          Drive 12.6 miles, 25 min



🚗 **via I-95 N and FL-826 W**          **24 min**
Fastest route, despite the usual          15.5 miles
traffic

🚗 **via FL-924 W/Florida 924**          **25 min**
**Gratigny Pkwy**          12.6 miles

Lighter traffic than usual
⚠️ This route has tolls.

**Explore nearby TownePlace Suites Miami Lakes**



🍴 Restaurants    🛏️ Hotels    ⛽ Gas stations    🅿️ Parking Lots    ••• More